IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Jerry L. Hicks, | : | |
| | : | Case No. 1:07-cv-483 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART AND |
| Cincinnati Police Officer Jason Hodge, et al., | : | DENYING IN PART MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 19). For the reasons that follow, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

I. BACKGROUND

Plaintiff Jerry L. Hicks is the owner and landlord of an apartment building located at 2861 Harrison Avenue in Cincinnati, Ohio. (Hicks Aff. ¶ 3.) On the morning of April 24, 2007, Hicks went to the apartment building for the purpose of opening a door to apartment number seven ("Apt. 7") for a requested repair to be performed by two repairmen, Ben Stenson and Ben Murph. (Id. ¶ 2; Murph Aff. ¶ 2; Stenson Aff. ¶ 2.) On that same morning, Defendant Cincinnati Police Officer ("CPO") Jason Hodge responded to a dispatch of a burglar alarm at Apt. 7. (Hodge Aff. ¶ 3.) CPO Hodge asserts, based on his experience, that the Harrison Avenue area of Cincinnati has a high rate of crime, including breaking and entering crimes. (Id. ¶ 4.)

CPO Hodge encountered Stenson and Murph retrieving tools from a vehicle when he arrived at the apartment building. He told them that he was responding to a burglar alarm report

1

at Apt. 7. (Id. ¶ 5; Murph Aff. ¶¶ 4-5; Stenson Aff. ¶¶ 4-5.) Stenson states that CPO Hodge asked him if he was there to do work at Apt. 7 and he responded "yes." (Stenson Aff. ¶ 5.) Murph and Stenson state that they told CPO Hodge that Hicks, the building owner, was in the building. (Murph Aff. ¶ 6; Stenson Aff. ¶ 6.) CPO Hodge in his affidavit does not confirm or deny that he had a conversation with Murph and Stenson prior to entering the building.

CPO Hodge also saw Hicks exiting the building through the security door when he arrived at the apartment building. (Hodge Aff. ¶ 5; Murph Aff. ¶ 7; Stenson Aff. ¶ 7.) The parties agree that Hicks identified himself to Hodge as the building owner. (Hodge ¶ 6; Hicks ¶ 9.) Hicks states that he told CPO Hodge that he had unlocked the door to Apt. 7 for the repairmen. (Hicks Aff. ¶ 9.) CPO Hodge told Hicks that he needed to enter the apartment and verify that the alarm was false. (Hodge Aff. ¶ 11.) CPO Hodge entered the apartment and verified that it was in order. (Hodge Aff. ¶ 12.)

CPO Hodge believed that he needed to investigate and confirm whether Hicks was, in fact, the property owner. (Hodge Aff. ¶ 8.) CPO Hodge asked Hicks for identification so that he could complete the appropriate police report. (Hodge Aff. ¶ 13.) Hicks did not believe his identification was needed, apparently on the basis that Stenson and Murph had identified him as the owner. (Id.; Stenson Aff. ¶ 6; Murph Aff. ¶ 6.) Stenson and Murph aver that CPO Hodge used a loud voice in asking Hicks for his identification. (Stenson Aff. ¶ 8; Murph Aff. ¶ 8.) Hicks initially reached into his pocket to get his identification. (Hodge Aff. ¶ 15; Hicks Aff. ¶ 16.) CPO Hodge states that Hicks then said, "Fuck it. Take me to jail." (Hodge Aff. ¶ 15.) Virginia Ferguson, who lives in Apartment 8 in the same apartment building, also heard Hicks tell CPO Hodge to take him to jail when he was asked for his identification. (Ferguson Aff.

2

¶¶ 8-9.) On the other hand, Stenson states that Hicks instead said, "What do you need to see my ID for?" and "Go ahead and do what you gotta do. Let me get my ID out of my pocket." (Stenson Aff. ¶ 9.) Similarly, Murph states that Hicks responded by saying "Sir, give me a minute and I'll get some ID. You don't have to holler at me." (Murph Aff. ¶ 9.)

At some point during this exchange, CPO Hodge and Hicks also discussed the tenant's installation of the burglar alarm in Apt. 7. (Hodge Aff. ¶¶ 9, 17-18; Hicks Aff. ¶¶ 12-14.) Hicks told CPO Hodge that the tenant had installed a burglar alarm without permission and in violation of the lease. (Hicks Aff. ¶¶ 12-14.) CPO Hodge told Hicks that the installation of the alarm was not a criminal matter. (Id. ¶ 13; Hodge Aff. ¶ 18.) Hicks states that CPO Hodge did not request his identification until after the discussion about the tenant's installation of the alarm became heated. (Hicks Aff. ¶¶ 12-14.) CPO Hodge states that he asked for the identification both before and after they discussed the alarm and that each time Hicks responded with "Fuck it. Take me to jail." (Hodge Aff. ¶¶ 13-19.) In any event, both parties confirm that they had a disagreement about whether the tenant was authorized to install the burglar alarm.

CPO Hodge considered Hicks behavior to be unusual and he thought that Hicks might not have been authorized to be in the apartment building. (Hodge Aff. ¶ 20.) He states that he told Hicks to put his hands behind his back and, when Hicks complied, he handcuffed Hicks. (Hodge Aff. ¶¶ 21-23.) CPO Hodge then led Hicks — who had a protective boot on his foot — down the apartment stairs and to the police cruiser by placing his hand on Hicks' arm. (Hodge Aff. ¶¶ 23-27.) CPO Hodge states that he pulled "lightly" on Hicks' arm when Hicks stopped walking and refused to exit the building's security door. (Hodge Aff. ¶ 26.) Ferguson, the apartment building resident, also states that she "did not see Officer Hodge push, jerk, shove, or

3

drag Mr. Hicks." (Ferguson Aff. ¶ 11.) CPO Hodge obtained Hicks' identification from him in the cruiser and then verified that Hicks owned the building. (Hodge Aff. ¶¶ 28-29.) CPO Hodge states that he then released Hicks from the handcuffs and the police cruiser, completed his report, and provided a copy to Hicks. (Id. ¶¶ 30-31.) CPO Hodge denies that Hicks complained about pain from the handcuffs or from the manner by which he was escorted to the police car. (Hodge Aff. ¶ 34.)

Hicks, Murph, and Stenson describe these events differently. They aver that CPO Hodge handcuffed Hicks when he reached his hand toward his back pocket to retrieve his identification. (Hicks Aff. ¶ 16; Stenson Aff. ¶ 10; Murph Aff. ¶ 10.) Hicks states that he pleaded with CPO Hodge not to use or to loosen the handcuffs. (Hicks Aff. ¶ 19.) He further states that he had trouble maintaining his balance when Hodge "forc[ed]" him down the staircase which did not have any handrails. (Hicks Aff. ¶ 20.) Hicks states that he told CPO Hodge not to "snatch [him] in that manner." (Id.) Stenson states that Hicks asked CPO Hodge not to put on the handcuffs too tightly. (Stenson Aff. ¶ 11.) Both Stenson and Murph state that CPO Hodge pushed Hicks forward when he escorted him down the stairs. (Stenson Aff. ¶ 12; Murph Aff. ¶ 11.) Hicks states that in the police cruiser he again asked CPO Hodge to loose the handcuffs because he was in pain and discomfort, but that CPO Hodge told him that he would not loosen the handcuffs until he completed his report. (Hicks Aff. ¶¶ 22-23.) Further, Hicks states that he did not see CPO Hodge run his information to verify his ownership of the building. (Id. ¶ 25.)

The parties agree that after Hicks was released, Hicks asked Hodge why he did not "go arrest some real criminals" and asked for CPO Hodge's name and badge number because Hicks was going to contact his attorney. (Doc. 23-4 at 12.) CPO Hodge provided Hicks with his name

and badge number. (Id.)

Hicks avers that he sought medical treatment the following day from Dr. Charles B. Hafele, D.C., for lower neck and upper back pain which had begun during the course of his "arrest" by CPO Hodge. (Id. ¶ 26.)

On August 17, 2007, Hicks filed his Amended Complaint against CPO Hodge and Thomas Streicher, the Chief of the Cincinnati Police Department, in their individual capacities only, and the City of Cincinnati. Hicks asserts federal civil rights claims and state law torts. Defendants now have moved for summary judgment as to all claims stated against them. Their motion is ripe for adjudication.

## II.     STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported

motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

### III.    ANALYSIS

### A.    Claims Against CPO Hodge

#### 1.    Federal Law Claims

Hicks asserts that he was subjected to an unreasonable seizure, arrested without warrant or probable cause, and subjected to the use of excessive force in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. He asserts federal civil rights claims pursuant to 42 U.S.C. §§ 1983 and 1988. Section 1983 creates a cause of action to remedy constitutional violations as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to
> be subjected, any citizen of the United States . . . to the deprivation
> of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Phillips v. Roane Cty., Tenn., 534 F.3d 531, 538 (6th Cir. 2008) (citation omitted). Section 1988 authorizes attorney fees to a prevailing party in a § 1983 claim.

CPO Hodge has moved for summary judgment on the federal law claims on the basis of qualified immunity from suit. The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether qualified immunity attaches, the Court first must ask if the facts alleged, taken in the light most favorable to the party asserting the injury, show that the government official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Parsons v. City of Pontiac, 533 F.3d 492, 500 (6th Cir. 2008). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. If there is not a constitutional violation, then there is no need to inquire further about qualified immunity. Id. If there was a constitutional violation, the Court then must ask if the specific rights violated were clearly established. Id. at 202; see also Parsons, 533 F.3d at 500. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Therefore, the Court first must examine whether CPO Hodge's conduct violated a constitutional right. CPO Hodge describes his conduct of handcuffing Hicks and detaining him in the police cruiser for a short period of time as a permissable investigative detention or Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). A Terry stop implicates Fourth Amendment concerns. "[T]he Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime — 'arrests' in traditional terminology." Id. at 16. A

7

seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." Id.  A Terry stop is justified if the police officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.  Stated differently, "[p]olice officers . . . may briefly detain an individual 'if they have a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if they lack probable cause under the Fourth Amendment.'" Burr v. Burns, 439 F. Supp. 2d 779, 785 (S.D. Ohio 2006) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).  The detention must be "judged against an objective standard." Terry, 392 U.S. at 21.

Hicks, not surprisingly, challenges CPO Hodge's version of events and contends that his detention amounted to an arrest.  He further contends that CPO Hodge lacked probable cause or a warrant to make an arrest.  Therefore, the Court must determine whether Hicks has put forward sufficient evidence for a reasonable factfinder to conclude that his detention amounted to an arrest made without probable cause or a warrant.

Courts consider numerous factors when determining whether a person has been arrested:

the transportation of the detainee to another location, significant restraints on the
detainee's freedom of movement involving physical confinement or other
coercion preventing the detainee from leaving police custody, the use of weapons
or bodily force, and the issuance of Miranda warnings.

United States v. Delano, 543 F. Supp. 2d 791, 802 (N.D. Ohio 2008); see also U.S. v. Shaw 464 F.3d 615, 621 (6th Cir. 2006).  "There is no rigid time limit for a Terry stop." Houston v. Clark County Sheriff Deputy John Does 1-5, 174 F.3d 809, 815 (6th Cir. 1999).  Detentions lasting between thirty minutes to one hour have been held to constitute Terry stops. Houston, 174 F.3d at 815; Amiri v. City of Sterling Heights, No. 04-72717, 2005 WL 1048755, *4 (E.D. Mich. Apr.

27, 2005). "[T]he length and manner of an investigative stop should be reasonably related to the basis for the initial intrusion." Houston, 174 F.3d at 814; accord Burr, 439 F. Supp. 2d at 788 (same).

Likewise, neither detention in a police cruiser nor the use of handcuffs automatically transform an investigative detention into an arrest. See Houston, 174 F.3d at 815; Delano, 543 F. Supp. 2d at 802. However, such shows of force "must be warranted by the circumstances." Smoak v. Hall, 460 F.3d 768, 781 (6th Cir. 2006); see also Bennett v. City of Eastpointe, 410 F.3d 810, 836-38 (6th Cir. 2005). But cf. United States v. Butler, 223 F.3d 368, 375 (6th Cir. 2000) (suggesting in dicta that being placed in a police cruiser transforms an investigatory detention into an arrest). "[F]or the use of handcuffs during a Terry stop, the Fourth Amendment requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case." Bennett, 410 F.3d at 836.

Genuine issues of material fact remain in dispute concerning Hick's detention. However, if a reasonable jury were to credit the testimony of Hicks, and his witnesses, Murph and Stenson, they could conclude that Hicks was arrested. In this version of events, Murph and Stenson identified Hicks as the owner of the building; Hicks identified himself as the owner and permitted CPO Hodge to verify that there was no burglary in Apt. 7; Hicks attempted to produce his identification when it was requested; CPO Hodge pushed Hicks forward as he escorted Hicks to the police cruiser; CPO Hodge forcibly handcuffed Hicks and detained him in the police cruiser despite Hicks' attempts to cooperate, despite the fact that Hicks had limited mobility, and despite the fact that Hicks did not threaten physical harm to anyone; and CPO Hodge ignored

9

Hicks' repeated requests to loosen the handcuffs. A reasonable jury could conclude that CPO Hodge's show of force and detention of Hicks was not warranted by the circumstances and resulted in an arrest. See Burr, 439 F. Supp. 2d at 788 (stating that a jury would determine whether a plaintiff's detainment "ultimately ripened into an arrest"). A reasonable jury could also conclude that CPO Hodge lacked probable cause to arrest Hicks. Parsons, 533 F.3d at 501 (stating that the existence of probable cause was a jury question).[1] CPO Hodge would not be entitled to qualified immunity in such circumstances. Id. at 504 (finding that the right not to be arrested absent probable cause was clearly established by at least 2004). Accordingly, summary judgment is denied to CPO Hodge on the Fourth Amendment claim.

Turning to the Eighth Amendment claim against CPO Hodge, Hicks alleges that CPO Hodge used unreasonable force in making the arrest. "The use of excessive or unreasonable force by police officers in the exercise of their authority gives rise to a § 1983 cause of action." Russo v. City of Cincinnati, 953 F.2d 1036, 1044 (6th Cir. 1992). The question of whether an officer used excessive force is analyzed under an objective standard, requiring the Court to consider whether the force used to subdue the plaintiff was reasonable from the perspective of a prudent officer on the scene. See Greene v. Barber, 310 F.3d 889, 898-99 (6th Cir. 2002). This is a fact-specific inquiry that depends on factors such as (1) the severity of the crime at issue, (2) whether the suspect posed a threat to anyone, and (3) whether the suspect attempted to escape or resisted arrest. Graham v. Connor, 490 U.S. 386, 396 (1985); Patrick v. City of Detroit, 906 F.2d 1108, 1115 (6th Cir. 1990).

---

[1] CPO Hodge does not argue that he had the necessary probable cause or warrant to make an arrest.

Again, the relevant material facts are disputed. CPO Hodge's only objective evidence that Hicks posed a threat to anyone was perhaps his use of abusive language during their disagreement about the tentant's alarm. On the other hand, Hicks offers evidence that he cooperated with CPO Hodge by permitting him to inspect Apt. 7 and attempting to produce his identification upon request. "The right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes." Burchett v. Kiefer, 310 F.3d 937, 944 (6th Cir. 2002). Hicks states that he repeatedly requested CPO Hodge to loosen the handcuffs and that he sought medical treatment for back and neck pain following his detention, both elements necessary to establish a excessively forceful handcuffing claim. Lyons v. City of Xenia, 417 F.3d 565, 575-76 (6th Cir. 2005) (stating that a plaintiff must allege that she complained about the handcuffing and suffered physical injury therefrom). Sixth Circuit precedent "allow[s] the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight." Burchett, 310 F.3d at 944. CPO Hodge is not entitled to summary judgment on the Eighth Amendment claim.

### 2.   State Law Claims

Plaintiff Hicks also has pleaded multiple state law torts against CPO Hodge including false arrest,[2] assault and battery, negligence, and negligent infliction of emotional distress. CPO Hodge moves for summary judgment on multiple grounds, the first of which is statutory

---

[2] The Court is unable to discern a substantial difference between Hicks' false arrest and unlawful arrest tort claims. Based a short perusal of Ohio law, it appears that Ohio courts refer to claims for arrests made without probable cause or without warrant as false arrest claims. This Court will treat both the Second Cause of Action (false arrest) and the Fourth Cause of Action (unlawful arrest) as a single false arrest claim.

immunity. The Ohio Revised Code ("O.R.C.") provides statutory immunity to "an employee of a political subdivision [in a civil action] to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function" unless one of two exceptions applies. O.R.C. §§ 2744.03(A) and (A)(6). Police services are considered a governmental function eligible for immunity. O.R.C. § 2744.01(C)(2)(a); see also McCloud v. Nimmer, 72 Ohio App. 3d 533, 538, 595 N.E.2d 492 (1991). The exceptions to statutory immunity for injuries caused by acts in connection with the provision of police services are as follows:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

O.R.C. § 2744.03(A)(6).

In this case, CPO Hodge contends that neither exception applies. Hicks, on the other hand, asserts that CPO Hodge acted maliciously or in bad faith. Malice is "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Woods v. Miamisburg City Schs., 254 F. Supp. 2d 868, 881 (S.D. Ohio 2003) (citation omitted); accord Cook v. Cincinnati, 103 Ohio App. 3d 80, 90, 658 N.E.2d 814 (1995) (same). "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. Cook, 103 Ohio App. 3d at 90-91.

CPO Hodge is entitled to § 2744.03(A) statutory immunity as to Hicks' negligence and

negligent infliction of emotional distress claims only. "Pursuant to the statute, a police officer cannot be held personally liable for mere negligence . . . ." Wingrove v. Forshey, 230 F. Supp. 2d 808, 827 (S.D. Ohio 2002). On the other hand, material facts remain in dispute regarding the conduct of both Hicks and CPO Hodge as to the false arrest and assault and battery claims. The Court cannot find as a matter of law at this stage that CPO Hodge acted without malice or bad faith when he handcuffed Hicks and detained him in the police cruiser. Therefore, CPO Hodge is not entitled to summary judgment on the false arrest or assault and battery claim on the basis of statutory immunity.

Finally, regarding the assault and battery claim, CPO Hodge also moves for summary judgment on the basis of a qualified privilege. A police officer effectuating a valid investigatory detention or an arrest has a qualified privilege to engage in physical contact with a suspect. Hale v. Vance, 267 F. Supp. 2d 725, 736 (S.D. Ohio 2003). However, the use of excessive force negates the privilege to commit battery while making a lawful arrest. Alley v. Bettencourt, 134 Ohio App. 3d 303, 313, 730 N.E.2d 1067 (1999). Material facts are in dispute here regarding whether CPO Hodge acted reasonably when he handcuffed Hicks. Accordingly, CPO Hodge is not entitled to summary judgment on the assault and battery claim on the basis of a qualified privilege.

In sum, the Court grants summary judgment to CPO Hodge only as to the state law claims for negligence and negligent infliction of emotional distress.

**B.      Claims Against Chief Streicher**

Hicks also has alleged claims against Chief Streicher in his individual capacity. Hicks identifies Chief Streicher as the "chief policy making person in the Cincinnati Police Department

[who] ratified the conduct of Defendant Hodge." (Doc. 12 ¶ 7.) He is named as a defendant on the federal law claims and on each of the state law torts except for the assault and battery claim.

Chief Streicher moves for summary judgment on the federal law claims on the basis that Hicks has failed as a matter of law to establish his liability. Section 1983 liability "cannot be imposed under a theory of respondeat superior." Grinter v. Knight, 532 F.3d 567, 575 (6th Cir. 2008) (internal citation and quotation omitted). A supervisor can be held liable under § 1983 only if he "encouraged the specific incident of misconduct or in some other way directly participated in it," or "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). "Merely having the right to control employees is not enough . . . , nor is merely being aware of the misconduct." Learn v. Daeschner, 228 F.3d 729, 740 (6th Cir. 2000).

In the "Statement of Facts" in the First Amended Complaint, Hicks repeatedly states that multiple "Defendants" participated in the events at the apartment building the morning Hicks was detained or arrested. (Doc. 12 ¶¶ 8-17.) However, later in the First Amended Complaint, Hicks clarifies that Chief Streicher, CPO's Hodge's "immediate chief," was not "on the scene in question." (Id. ¶¶ 47, 50.) Also, the evidence demonstrates that CPO Hodge acted alone when he responded to an alarm at the apartment building and subsequently handcuffed and detained Hicks. (Hicks Aff. passim; Murph Aff. passim; Stenson Aff. passim.) Hicks has offered no facts to support a finding that Chief Streicher encouraged, authorized, approved, or knowingly acquiesced in the alleged misconduct of CPO Hodge. Chief Streicher is entitled to summary judgment as to the federal claims stated against him.

Chief Streicher is entitled to summary judgment on the state law tort claims as well.

Chief Streicher was not present at the apartment building when CPO Hodge detained Hicks. Hicks has not presented any affirmative evidence establishing that Chief Streicher could be held liable for false arrest or negligence. As to the claim for negligent hiring, training, and retention under Ohio law, the elements of the claim are as follows:

> (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining [or training] the employee as the proximate cause of plaintiff's injuries.

Cooke v. Montgomery Cty., Ohio, 158 Ohio App. 3d 139, 814 N.E.2d 505, ¶¶ 22-23 (Ohio App. 2004); see also Strock v. Pressnell, 38 Ohio St. 3d 207, 217, 527 N.E.2d 1235 (1988) (equating negligent training with negligent supervision). Hicks has not established at least the third element of the claim as a matter of law. Even if CPO Hodge was incompetent or acted in an unconstitutional manner, Hicks does not identify any evidence demonstrating Chief Streicher's knowledge of such incompetent or unconstitutional conduct.

Alternatively, Chief Streicher is entitled to summary judgment on the state law claims on the grounds of statutory immunity pursuant to O.R.C. § 2744.03(A). Hicks has not proffered any evidence that Chief Streicher acted with malice, in bad faith, or in a wanton manner in this matter as would be necessary to prove an exception to immunity under O.R.C. § 2744.03(A)(6).

Accordingly, Chief Streicher is entitled to summary judgment as to all claims asserted against him in this action.

**C.     Claims against City of Cincinnati**

Finally, Hicks seeks to hold the City of Cincinnati liable for alleged civil rights violations committed by CPO Hodge and for the same state law torts as Chief Streicher. The City has

moved for summary judgment. The Court will examine the federal law claims, then the state tort claims, asserted against the City.

Beginning with the federal law claims, a city or municipality may be "liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (emphasis in the original).[3] Again, respondeat superior is not available as a theory of recovery under § 1983. Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). Therefore, a plaintiff seeking to subject a city to § 1983 liability for the actions of its officers must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Board of Cty. Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). "[T]here need not be a formal policy for there to be an unconstitutional custom that amounts to policy" for purposes of imposing liability. Berry v. City of Detroit, 25 F.3d 1342, 1345 (6th Cir. 1994). The Sixth Circuit has recognized at least four avenues by which to prove a municipality's policy or custom:

> (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2004). A plaintiff seeking to establish liability under an "unofficial policy or custom" theory typically must show more than a single instance of unconstitutional conduct. See, e.g., City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

---

[3] "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir. 2001)

The basis for Hicks' federal claims against the City of Cincinnati is unclear. Hicks has not identified a City policy or custom that caused his constitutional injury. Nor has Hicks put forward any evidence concerning a clear and consistent pattern by City police officers to make arrests without probable cause, to make Terry stops without reasonable suspicion, or to use excessive force in making a detention. Hicks does allege a separate state law claim for negligent training. (Doc. 12 at 6.) However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio, 489 U.S. at 388. Hicks has not put forward evidence upon which a jury could conclude that the City's police training was inadequate, much less that it amounted to deliberate indifference. Likewise, Hicks does not identify evidence supporting his assertion in the summary judgment motion that "City of Cincinnati policymakers ratified Hodge's actions by failing to retard the harassment suffered by Hicks." (Doc. 22 at 18.) As such, the Court holds that the City of Cincinnati is entitled to summary judgment as to the federal law claims.

As to the state tort claims, the City moves for summary judgment on the basis of statutory immunity pursuant to O.R.C. Chapter 2744. Chapter 2744 "requires a three-tiered analysis to determine whether a political subdivision should be allocated immunity from civil liability." Hubbard v. Canton City Sch. Bd. of Educ., 97 Ohio St. 3d 451, 780 N.E.2d 543, ¶ 10 (2002). The first tier is to recognize the general rule stated in O.R.C. § 2744.02(A)(1) that political subdivisions are not liable in damages. See id. This section establishes a "broad immunity" for the performance of governmental functions subject only to enumerated exceptions. Wilson v. Stark Cty. Dept. of Human Servs., 70 Ohio St. 3d 450, 452, 639 N.E.2d 105 (1994). The second

17

tier requires analysis of whether the exceptions to immunity in O.R.C. § 2744.02(B) apply. See Hubbard, 97 Ohio St. 3d 451 at ¶ 12. Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in O.R.C. § 2744.03 applies. See Cater v. City of Cleveland, 83 Ohio St. 3d 24, 28, 697 N.E.2d 610 (1998).[4]

The operation of a police department is a governmental function for which a municipality such as the City of Cincinnati has general immunity. O.R.C. §§ 2744.01(C)(2) and 2744.02(A)(1). None of the exceptions to general immunity stated in O.R.C. § 2744.02(B) apply to the allegations here. See Barstow v. Waller, No. 04CA5, 2004 WL 2427396, ¶ 31 (Ohio App. Oct. 26, 2004) (finding that city had immunity from false arrest claim). Finally, the defense stated in O.R.C. § 2744.03(A)(5) for the "exercise of judgment or discretion in determining . . . how to use . . .personnel" applies to the negligent hiring, training, and retention claim because Hicks has not established that the City exercised the judgment or discretion "with malicious purpose, in bad faith, or in a wanton or reckless manner." Sharma v. Hummer, No. WD-00-047, 2001 WL 460281, *13 (Ohio App. Apr. 27, 2001) (finding that a city had immunity for claim of negligent training and supervision); Drew v. Laferty, No. 98CA522, 1999 WL 366532, *1 (Ohio App. June 1, 1999) (granting a city immunity on negligent hiring and supervision claim because the plaintiff did not plead that the city acted maliciously or in bad faith). Accordingly, the City has statutory immunity against the state law claims.

---

[4] The Court notes that the exception to immunity for bad faith or malicious conduct provided in O.R.C. § 2744.03(A)(6) applies "only to the immunity of subdivision employees, not the subdivision itself." Nungester v. Cincinnati, 100 Ohio App. 3d 561, 566, 654 N.E.2d 423 (1995).

18

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 19) is **GRANTED IN PART AND DENIED IN PART**.  Summary judgment is granted to CPO Hodge as to the state law claims for negligence and negligent infliction of emotional distress, to Chief Streicher as to all claims against him, and to the City of Cincinnati as to all claims against it.  Summary judgment is denied to CPO Hodge as to the federal law claims, the assault and battery claim, and the false arrest claim.

IT IS SO ORDERED.


      ___s/Susan J. Dlott_____
      Susan J. Dlott
      United States District Judge